### UNITED STATES of America

### v.

### Carlos SANCHEZ, T/N Luis Garcia, Defendant.

### No. CR 89–408–02(ADS).

United States District Court,
E.D. New York.

Dec. 22, 1998.

Zachary W. Carter, United States Attorney, E.D.N.Y., Garden City, NY, by Assistant United States Attorney Joseph R. Conway, for U.S.

Law Office of Lynne F. Stewart, New York City, (Lynne F. Stewart, Jonathan D. Libby, of counsel), for Defendant.

### *MEMORANDUM OF DECISION AND ORDER*

SPATT, District Judge.

In this unusual case, the Department of Probation served the defendant with a summons charging him with a violation of supervised release, approximately four years after

the defendant pleaded guilty to the state drug charges which form the basis for the alleged violation. At issue is the defendant's motion to dismiss the summons, on the ground that the years of delay between the alleged violation and the issuance of the summons violates his due process rights and U.S.S.G. § 7B1.2(a).

## I. BACKGROUND

On March 2, 1990, the defendant, Carlos Sanchez T/N Luis Garcia (the "defendant" or "Sanchez") pleaded guilty to conspiracy to distribute and possess with intent to distribute cocaine. On May 30, 1990, this Court sentenced him to a term of 63 months incarceration to be followed by five years of supervised release. On December 27, 1993, Sanchez was released from incarceration and he commenced his supervised release term in the District of New Jersey, an express condition of which was that he "shall not commit another Federal, state or local crime."

Five months later, on May 27, 1994, while on supervised release, state police arrested Sanchez in Clifton, New Jersey under his true name, Luis Garcia, for possession of cocaine with intent to distribute, aggravated assault and resisting arrest. The arrest took place on the date of the offense after the Clifton Township Tactical Narcotics Unit followed the defendant and his co-hort, Michael Eliasof, from a well-known drug site. The police ran a license plate check on Eliasof's car, and discovered his prior criminal record, including arrests for drug related offenses. When the officers pulled the car over and identified themselves, Eliasof put his hands in the air. The defendant, however, jumped into the rear seat of the car, and placed his hands in his groin area. One of the officers, thinking the defendant was reaching for a gun, struggled with him. Throughout the ensuing altercation, the defendant kicked and punched the officer, and refused to be handcuffed. As a result, the officer sustained blows to his head and face, and a broken finger. Although a search of the defendant revealed he was unarmed, the police recovered from his person a foil packet containing thirty-six grams of cocaine.

On September 22, 1994, the defendant pleaded guilty to state charges of possession of a controlled substance with intent to distribute. On January 23, 1995, the Passaic County Superior Court sentenced him to seven years incarceration. Less than a year and a half later, on June 11, 1996, the State of New Jersey released him to parole supervision through July 15, 1999.

There is some dispute as to when the Eastern District of New York Department of Probation was notified of the defendant's New Jersey arrest and conviction. The Government apparently concedes that the delay was due to the "failure of the District of New Jersey Probation Department to promptly notify the Eastern District Probation Department of Sanchez's violation." (Letter of AUSA Joseph R. Conway, at 2). According to the defendant, prior to his arrest, he was regularly reporting to his former probation officer, William Bartell in the District of New Jersey, and he promptly advised him of his arrest and guilty plea. The defendant further states that upon his release from New Jersey State custody, he received a letter from his federal probation officer instructing him to resume reporting once a month. In any event, it was not until August 20, 1998 that the U.S. Department of Probation sought a warrant or summons for the defendant's violation of the conditions of his supervised release for his New Jersey arrest approximately four years earlier.

## II. DISCUSSION

The defendant concedes that 18 U.S.C. § 3583(g) makes revocation of supervised release mandatory upon a finding of a violation of the conditions of supervised release. Nevertheless, he urges the Court to find that the delay from the date of the alleged violation to the summons was so "unreasonable" as to violate the principles of "fundamental fairness" guaranteed by due process. He contends that he suffered "significant prejudice" from this delay in that "it is quite possible that the New Jersey case would have resulted in a sentence concurrent to that federal sentence" had a summons or warrant been promptly executed (Letter of Jonathan D. Libby, at 5). He also complains that the

delay contravenes the Sentencing Commission Policy Statement, set forth at U.S.S.G. § 7B1.2(a), requiring a probation officer to "promptly report" any alleged violation. The Court considers each of these arguments in turn.

## A. Due Process

The Court considers the defendant's theory that the issuance of a summons at this late stage violates his due process rights.

It is indisputable that the revocation of supervised release raises important constitutional concerns. To determine the extent of constitutional protections to be afforded, the Court looks to cases involving revocation of supervised release, as well as probation and parole revocation, which the Second Circuit has labeled "constitutionally indistinguishable" for these purposes. *See United States v. Meeks,* 25 F.3d 1117, 1121 (2d Cir.1994)(citing *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973)[finding no constitutionally relevant difference between parole and probation for the purposes of due process analysis] ).

■ The Court agrees with the defendant's basic premise that the revocation of supervised release, while "not part of a criminal prosecution, [nevertheless entails] the loss of liberty [which is a deprivation] .... worthy of some due process protection." *United States v. Brown,* 899 F.2d 189, 193 (2d Cir.1990)(citing *Gagnon v. Scarpelli,* 411 U.S. at 781, 93 S.Ct. 1756 [applying due process in the context of probation revocation] ); *see also Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)(applying due process principles to parole revocation hearings). Because an individual on supervised release has an obvious interest in maintaining his conditional liberty against an unjustified deprivation, the Supreme Court has imposed certain procedural limits on revocation. *See Bearden v. Georgia,* 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983). "Foremost among these is the right to a hearing at which the court determines two issues: whether the probationer violated a condition of probation as a matter of fact and, if so, whether this fact warrants [or requires] revocation." *United States v.*

*Brown,* 899 F.2d at 193–94 (citing *Black v. Romano,* 471 U.S. 606, 611, 105 S.Ct. 2254, 85 L.Ed.2d 636 (1985); *Gagnon v. Scarpelli,* 411 U.S. at 786, 93 S.Ct. 1756; Fed. R.Crim.P. 32.1[a] advisory committee note). In addition, as a matter of due process, the probationer is entitled to written notice of the claimed violations of his probation; disclosure of the evidence against him; an opportunity to be heard in person and to present witnesses and documentary evidence; a neutral hearing body; and a written statement by the fact-finder as to the evidence relied on and the reasons for revoking probation. *Gagnon,* 411 U.S. at 786, 93 S.Ct. 1756; *Black v. Romano,* 471 U.S. at 612, 105 S.Ct. 2254.

By the same token, the Supreme Court has declined to attach to revocation proceedings "the full panoply of procedural safeguards associated with a criminal trial." *Black v. Romano,* 471 U.S. at 613, 105 S.Ct. 2254. The basis for this distinction between revocation proceedings and criminal prosecutions is that a parolee or probationer already stands convicted of a crime, even though both proceedings may result in a loss of liberty. *Gagnon v. Scarpelli,* 411 U.S. at 782, 93 S.Ct. 1756; *see also United States v. Brown,* 899 F.2d at 192 (noting that while a criminal conviction requires proof beyond a reasonable doubt, revocation requires only proof to satisfy the court "that the probationer has abused the opportunity granted him not to be incarcerated")(citing *Roberson v. Connecticut,* 501 F.2d 305, 308 [2d Cir.1974]; *United States v. Nagelberg,* 413 F.2d 708, 709 [2d Cir.1969], *cert. denied,* 396 U.S. 1010, 90 S.Ct. 569, 24 L.Ed.2d 502 [1970]; *Knight v. Estelle,* 501 F.2d 963, 964 n. 3 [5th Cir. 1974] ), *cert. denied,* 421 U.S. 1000, 95 S.Ct. 2399, 44 L.Ed.2d 668 [1975] )).

■ Bearing these principles in mind, the Court finds that the four years of delay between the violation and summons did not violate due process. Significantly, he has received the right which is considered to be "foremost" among the mandatory procedural safeguards: the right to a hearing at which the court determines whether he violated a condition of probation as a matter of fact and, if so, whether this fact warrants or

requires revocation. *United States v. Brown,* 899 F.2d at 193–94 (citing *Black v. Romano,* 471 U.S. 606, 611, 105 S.Ct. 2254, 85 L.Ed.2d 636 [1985]; *Gagnon v. Scarpelli,* 411 U.S. at 786, 93 S.Ct. 1756; Fed. R.Crim.P. 32.1[a] advisory committee note). He also has at his disposal all the other rights mandated in the relevant Supreme Court opinions, namely: written notice of the claimed violations of his probation; disclosure of the evidence against him; an opportunity to be heard in person and to present witnesses and documentary evidence; a neutral hearing body; and a written statement by the fact-finder as to the evidence relied on and the reasons for revoking probation. *See Gagnon,* 411 U.S. at 786, 93 S.Ct. 1756; *Black v. Romano,* 471 U.S. at 612, 105 S.Ct. 2254.

In finding no due process violation, the Court turns to the thoughtful opinion in *United States v. Lopez,* 985 F.Supp. 59 (D.R.I.1997). There, the District Court rejected the defendant's argument that "[j]ustice, fundamental fairness, and a constitutional right to procedural due process militate towards relief ... in the light of the egregious failure of the U.S. Probation Office to promptly report this violation." *Lopez,* 985 F.Supp. at 63. In that case, the defendant argued that the 32–month delay in reporting the violation denied him the opportunity to argue for concurrent sentences before the state and federal courts, resulting in prejudice amounting to a violation of his rights under the Due Process Clause of the Fifth Amendment. The District Court stated that while it was "troubled," as this Court is, by the Probation Office's delay, that "oversight does not rise to the level of a constitutional violation." *Id.* at 64 (citing *United States v. Lovasco,* 431 U.S. 783, 790, 97 S.Ct. 2044, 52 L.Ed.2d 752 [1977]["Judges are not free, in defining 'due process,' to impose on law enforcement officials our 'personal and private notions' of fairness and to disregard the limits that bind judges in their judicial function."] ).

The Court agrees with the reasoning in *Lopez.* "It is beyond dispute that a delay in executing a violation warrant, standing alone, does not violate a defendant's due process rights." *Id.* (citing *United States v. Throneburg,* 87 F.3d 851, 853 [6th Cir.], *cert. denied,* —— U.S. ——, 117 S.Ct. 411, 136 L.Ed.2d 324 [1996]; *United States v. Tippens,* 39 F.3d 88, 90 [5th Cir.1994] ). This is the key to the due process violation by delay; to rise to the level of a constitutional violation, "the delay must result in prejudice to the defendant, such that it 'undermines his ability to contest the issue of the violation or to proffer mitigating evidence.'" *Id.* (citing *Tippens,* 39 F.3d at 90).

No such prejudice was present in *Lopez,* and none exists here. Notably, as in *Lopez,* the defendant does not contest the actual violation itself. Indeed, he pleaded guilty to the New Jersey drug charges and there is no issue that he violated the conditions of supervised release. The asserted prejudice is simply the alleged inability to argue for concurrent sentences before this Court or the New Jersey Court. However, the defendant "cites no authority for the proposition that a delay that may affect one's ability to serve sentences concurrently ... implicates due process ...." *Throneburg,* 87 F.3d at 853.

In the Court's opinion, the defendant's suggestion that he suffered "significant prejudice" because "it is quite possible that the New Jersey case would have resulted in a sentence concurrent to that federal sentence" is specious. With regard to the New Jersey state court's sentencing decision, there is no basis for making such a finding of prejudice since there is no indication that the New Jersey judge was so inclined. In any event, the Court is hard-pressed to find that the defendant was denied due process in this Court because he was deprived of the opportunity to seek some theoretical sentencing benefit in state court. Moreover, whether "this Court would have given defendant a concurrent sentence shortly after his state sentence was imposed is entirely speculative." *Lopez, supra,* at 64 (citing *United States v. Lainez–Leiva,* 957 F.Supp. 390, 392–93 [N.D.N.Y.][defendant's inability to serve concurrent sentence was insufficient prejudice to constitute a Sixth Amendment violation because the likelihood of concurrent sentence was highly speculative], *aff'd,* 129 F.3d 89 [2d Cir.1997] ); *see also Moody v.*

*Daggett,* 429 U.S. 78, 87, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976)(inability to serve state and federal sentences concurrently was insufficient prejudice where parole violator warrant was issued and lodged with institution of defendant's confinement, but not served upon him); *Throneburg,* 87 F.3d at 853 (same, where district court held revocation hearing nearly two years after issuance of supervised release violation warrant); *Tippens,* 39 F.3d at 90 (same, where there was delay of thirty months between issuance and execution of violator's warrant). In addition, as noted in *Lopez, supra,* at 64, the Sentencing Guidelines expressly discourage concurrent sentences under these circumstances. *See* U.S.S.G. § 7B1.3(f)("Any term of imprisonment imposed upon the revocation of probation or supervised release shall be ordered to be served consecutively to any sentence of imprisonment that the defendant is serving, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation of probation or supervised release.") "Finally, this Court's present ability to grant a sentence retroactively concurrent with the state sentence knocks the final brick from the tenuous foundation of defendant's argument." *Lopez, supra,* at 64–65 (citing *Tippens,* 39 F.3d at 90) ("[T]he district court had the ability 'to grant, retroactively, the equivalent of concurrent sentences.' ")

The Court has reviewed the cases the defendant cites and finds them inapposite. Significantly, none stand for the proposition that delay, in and of itself, constitutes a due process violation. For example, in *United States v. Tyler,* 605 F.2d 851, 853 (5th Cir. 1979), the Court's decision rested on the fact that the Probation Office opted not to file probation violation charges in the first and unsuccessful petition for revocation, but rather, waited for a second petition. Under these circumstances, the Fifth Circuit found that it was not merely the lengthy delay, but the delay "coupled with the probation officer's obvious decision not to file these charges in the first petition" that amounted to fundamental unfairness. No such aggravating factor is present here. Similarly distinguishable is *United States v. Hamilton,* 708 F.2d 1412, 1415 (9th Cir.1983), where the Ninth Circuit found that the defendant was "misled or did not receive adequate notice as to the true nature of his obligations, and that to revoke his probation on those grounds was an abuse of discretion." Here, of course, there was no confusion as to the defendant's obligation· to refrain from possessing cocaine with the intent to distribute and resisting arrest.

In addition, the Court does not disagree with the Ninth Circuit's suggestion that a "district court may violate due process when it revokes probation based on stale violations." *United States v. Shampang,* 987 F.2d 1439 (9th Cir.1993)(citing *United States v. Hamilton,* 708 F.2d 1412). However, this rule applies where the "delay between the violation and the decision to revoke probation . . . prejudice[s] the probationer by, among other things, making it more difficult for him or her to challenge the facts alleged to constitute a violation of probation conditions or to locate necessary witnesses." *Id.* (citing *United States v. Wickham,* 618 F.2d 1307, 1310 [9th Cir.1979]). As noted previously, no such prejudice exists here, where the defendant pleaded guilty to the state court charges and he does not challenge the facts alleged as the premise for the parole revocation in this Court.

In sum, the Court finds that the delay did not prejudice the defendant, and thus did not violate his due process rights.

## B. U.S.S.G. § 7B1.2(a)

█ U.S.S.G. § 7B1.2(a), entitled "Reporting of Violations of Probation and Supervised Release (Policy Statement)," provides that the "probation officer shall promptly report to the court any alleged Grade A or B violation." There is no question in this case that the U.S. Probation Office did not comply with this provision, irrespective of whether the delay was the result of an oversight in the District of New Jersey Probation Office or for some other reason. The issue is the legal effect, if any, of this failure to comply with § 7B1.2(a). The Guidelines are silent on this issue, and do not indicate what relief, if any, should be granted in the case of a failure to notify "promptly." While the defendant's arguments on this score are not entirely clear,

he seems to assert that he has been prejudiced by the violation of § 7B1.2(a), and, therefore, that the summons should be dismissed. Apparently, the Government does not respond to this point.

Again, the Court finds instructive the opinion in *United States v. Lopez, supra,* where the District Court found that a 32 month delay by the United States Department of Probation in reporting a state offense did not preclude sentencing of the defendant for a supervised release violation with the sentence to run consecutively to the state sentence. In rejecting the defendant's suggestion that the summons should be dismissed for failure to "promptly notify" under § 7B1.2(a), the Court emphasized that the "policy statements of Chapter 7 of the U.S.S.G. are not mandatory." *United States v. Lopez,* 985 F.Supp. at 62 (citing *United States v. Waters,* 84 F.3d 86, 89–90 [2d Cir.][per curiam], *cert. denied,* —— U.S.——, 117 S.Ct. 262, 136 L.Ed.2d 187 [1996]; *United States v. Mastello,* No. 96–2199, 1997 WL 413687, at *1 [1st Cir.1997][per curiam]; *United States v. O'Neil,* 11 F.3d 292, 301 n. 11 [1st Cir.1993] ). The District Court observed that "[u]nlike commentary or policy statements that interpret or explain guidelines, the Chapter 7 policy statements are set forth separately, do not interpret or explain any particular guideline, and are expressly designated as advisory only." *Id.* (citing *Waters,* 84 F.3d at 89 n. 4). While federal courts must consider these policy statements, they are not required to obey them. *Id.* at 63 (citing *Waters,* 84 F.3d at 89 n. 4). Consequently, the District Court concluded in *Lopez* that a defendant cannot expect or claim relief for a violation of § 7B1.2(a), because "that section creates no right to which relief may attach." *Id.*

The Court is persuaded by this reasoning, and agrees that it "would defy reason to find a right, vested in a defendant, to ensure compliance with a provision that need not be followed." *Id.* For these reasons, the Court rejects the defendant's motion to dismiss premised on a violation of § 7B1.2(a).

### III. CONCLUSION

Having reviewed the parties' submissions and heard oral argument, and for the reasons set forth above, it is hereby

**ORDERED,** that the defendant's motion to dismiss the summons charging the defendant with violations of supervised release is denied.

**IT IS SO ORDERED.**