UNITED STATES of America,
Appellee,

v.

Carlos SANCHEZ, Defendant–
Appellant,

Adam Diaz, Victor Perez, Alberto
Palma and Ysrael Palma,
Defendants.

No. 99–1016.

United States Court of Appeals,
Second Circuit.

Argued: Sept. 30, 1999

Decided: Sept. 13, 2000

Jonathan D. Libby (Lynne F. Stewart, on the brief), New York, NY, for Appellant.

Demetri M. Jones (Zachary W. Carter, United States Attorney, Eastern District of New York, Peter A. Norling, Assistant United States Attorney, Eastern District of New York, of counsel), Brooklyn, NY, for Appellee.

Before: MINER, PARKER, and STRAUB, Circuit Judges.

PARKER, Circuit Judge:

## INTRODUCTION

Defendant–Appellant Carlos Sanchez, also known as Luis Garcia, appeals from the amended judgment of the United States District Court for the Eastern District of New York (Arthur D. Spatt, Judge), upon a December 22, 1998 memorandum of decision and order, denying Defendant–Appellant Carlos Sanchez's motion to dismiss a summons charging him with violation of conditions of his supervised release.

The probation department served Sanchez with a summons charging him with a violation of supervised release approximately four years after he pleaded guilty to the state drug charges which form the basis for the violation. At issue is whether the delay between the violation and the issuance of the summons violated Sanchez's due process rights and the Sentencing Commission Policy Statement at U.S.S.G. § 7B1.2(a). We affirm the decision of the district court and hold that Sanchez's due process rights were not violated because he was not prejudiced by the delay, and that U.S.S.G. § 7B1.2(a) does not grant Sanchez a right to prompt re-

porting of his violation of supervised release.

## I. BACKGROUND

On March 2, 1990, Sanchez pleaded guilty to conspiracy to distribute and possession with intent to distribute cocaine. On May 30, 1990, the United States District Court for the Eastern District of New York sentenced him to 63 months' imprisonment to be followed by five years' supervised release. On December 27, 1993, Sanchez was released from custody and began his term of supervised release in the District of New Jersey. A condition of his supervised release was that he "not commit another Federal, state or local crime." *United States v. Sanchez*, 30 F.Supp.2d 595, 596 (E.D.N.Y.1998)(internal quotation marks omitted).

On May 27, 1994, while on supervised release, Sanchez was arrested by New Jersey state police under the name Luis Garcia for possession of cocaine with intent to distribute, aggravated assault, and resisting arrest. On September 22, 1994, Sanchez pleaded guilty in New Jersey Superior Court to state charges of possession of a controlled substance with intent to distribute. On January 23, 1995, the court sentenced Sanchez to seven years' imprisonment. On June 11, 1996, the State of New Jersey released Sanchez to parole supervision through July 15, 1999.

There was some dispute below, not resolved by the district court, as to when the U.S. Department of Probation in the Eastern District of New York was notified of Sanchez's New Jersey arrest and conviction. *See Sanchez*, 30 F.Supp.2d at 596. According to Sanchez, he reported regularly to his probation officer in the District of New Jersey and promptly informed him of the arrest and guilty plea. But it was not until August 20, 1998, over four years after the New Jersey arrest, that the Department of Probation sought a warrant for Sanchez's violation of the conditions of his supervised release.

On October 9, 1998, Sanchez moved the district court to dismiss the summons charging him with violation of his supervised release, arguing the summons violated his due process rights as well as the Sentencing Commission Policy Statement at U.S.S.G. § 7B1.2(a). He argued, as he does on appeal, that the delay from the date of the violation to the summons was "so 'unreasonable' as to violate the principles of 'fundamental fairness' guaranteed by due process." *Sanchez*, 30 F.Supp.2d at 596 (quoting Letter of [defense counsel] Jonathan D. Libby, at 5). Sanchez argued "that he suffered 'significant prejudice' from this delay in that 'it is quite possible that the New Jersey case would have resulted in a sentence concurrent to that federal sentence' had a summons or warrant been promptly executed." *Id.* (quoting same). Finally, he argued that the delay contravened the Sentencing Commission Policy Statement at U.S.S.G. § 7B1.2(a), *see id.* at 596–97, which states: "The probation officer shall promptly report to the court any alleged . . . violation [of probation or supervised release punishable by over one year imprisonment]." U.S.S.G. §§ 7B1.2(a), 7B1.1(a).

At a hearing on December 11, 1998, the district court denied Sanchez's motion. *See Sanchez*, 30 F.Supp.2d at 600. The court concluded that Sanchez's due process rights had not been violated because he had not been prejudiced by the delay. *See id.* at 597–98. The court also concluded that the policy statement at U.S.S.G. § 7B1.2(a) was not mandatory, and therefore that it did not afford Sanchez a basis for relief. *See id.* at 600. Following the hearing, Sanchez pleaded guilty to one count of violating his supervised release.[1]

---

1. It is not clear from the record whether Sanchez or the district court properly preserved the issue for appeal or whether Sanchez waived his right to appeal by pleading guilty. However, since waiver is not raised by the government on appeal, and it is not jurisdictional, we decline to address it.

He was sentenced to 18 months' imprisonment.

## II. DISCUSSION

### A. *Due Process*

■ Sanchez argues on appeal that his Fifth Amendment right to due process was violated by the more than four-year delay between his violation of supervised release and the issuance of the summons charging that violation. Sanchez argues that the delay in and of itself violated his due process rights-that is, that this Court should recognize a due process violation without requiring a showing of prejudice. In the alternative, Sanchez argues that he was prejudiced by the delay because it "may have ... subjected [him] to more incarceration than he otherwise might have received." We review de novo the district court's denial of Sanchez's motion to dismiss. *See United States v. Morgan,* 51 F.3d 1105, 1110 (2d Cir.1995).

■ This Court considers the constitutional protections for revocation of supervised release to be the same as those afforded for revocation of parole or probation. *See United States v. Meeks,* 25 F.3d 1117, 1121 (2d Cir.1994). We have recognized that the loss of liberty entailed in the revocation of probation is "worthy of some due process protection." *United States v. Brown,* 899 F.2d 189, 193 (2d Cir.1990) (citing *Gagnon v. Scarpelli,* 411 U.S. 778, 781, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973)). That protection takes the form of a collection of due process rights. "Foremost among these is the right to a hearing at which the court determines two issues: whether the probationer violated a condition of probation as a matter of fact and, if so, whether this fact warrants revocation." *Brown,* 899 F.2d at 193–94 (citing *Black v. Romano,* 471 U.S. 606, 611, 105 S.Ct. 2254, 85 L.Ed.2d 636 (1985)(footnote omitted); *Gagnon,* 411 U.S. at 786, 93 S.Ct. 1756); *see also Morrissey v. Brewer,* 408 U.S. 471, 482, 488–89, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). In addition, as a matter of due process, a probationer is entitled to: written notice of the claimed violations of his probation; disclosure of the evidence against him; an opportunity to be heard in person and to present witnesses and documentary evidence; the right to confront and cross-examine adverse witnesses (unless the hearing officer finds good cause for not allowing confrontation); a neutral hearing body; and a written statement by the factfinder as to the evidence relied on and the reasons for revoking probation. *See Gagnon,* 411 U.S. at 786, 93 S.Ct. 1756 (quoting *Morrissey,* 408 U.S. at 489, 92 S.Ct. 2593); *Black,* 471 U.S. at 612, 105 S.Ct. 2254. The Supreme Court does not, however, attach to revocation proceedings the full range of procedural safeguards associated with a criminal trial, *see Black,* 471 U.S. at 613, 105 S.Ct. 2254, because a probationer already stands convicted of a crime. *See Brown,* 899 F.2d at 192.

■ The district court concluded, "[b]earing these principles in mind, ... that the four years of delay between the violation and summons did not violate due process." *Sanchez,* 30 F.Supp.2d at 597. The court found that Sanchez had received the right to a hearing and that he had at his disposal all of the other required procedural safeguards. *See id.* at 597–98. The district court correctly concluded that delay between a defendant's violation of supervised release and the execution of the violation warrant does not, in and of itself, violate a defendant's due process rights. *See id.* at 598; *see also Moody v. Daggett,* 429 U.S. 78, 87–88, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976); *United States v. Throneburg,* 87 F.3d 851, 853 (6th Cir. 1996); *United States v. Tippens,* 39 F.3d 88, 90 (5th Cir.1994)(per curiam); *United States v. Lopez,* 985 F.Supp. 59, 64 (D.R.I. 1997). In *Moody,* the Supreme Court considered the issue "whether a federal parolee imprisoned for a crime committed while on parole [wa]s constitutionally entitled to a prompt parole revocation hearing when a parole violator warrant [wa]s issued and lodged with the institution of his confine-

ment but not served on him." 429 U.S. at 79, 97 S.Ct. 274. The Court held that due process did not require an immediate hearing. *See id.* at 86, 97 S.Ct. 274. Because we afford the same rights for revocation of supervised release as for parole revocation, we therefore hold that the delay in this case, in and of itself, did not violate due process.

▋ *Moody* also speaks to the issue of prejudice. The Supreme Court reasoned that the prospect of future incarceration for the defendant's violation of parole was speculative, and therefore that issuance of the warrant, without its execution, did not have "any present or inevitable effect upon the [defendant's] liberty interests." *Id.* at 87, 97 S.Ct. 274. The Court concluded that because the parole commission had the power retroactively to grant the equivalent of concurrent sentences and to provide for unconditional release upon completion of the sentences, deferral of the revocation decision did not deprive the petitioner of the opportunity to serve his sentences concurrently. *See id.* at 87–88, 97 S.Ct. 274. Consequently, the petitioner had not suffered a loss of protected liberty that would give rise to a due process claim. *See id.*

*Moody* thus supports the district court's decision that Sanchez was not prejudiced by the delay because the district court had the power to grant the equivalent of a concurrent sentence retroactively for Sanchez's violation of supervised release. Sanchez brought forth no evidence on which to base his argument that absent the delay he may have been permitted, by either the New Jersey state court or the New York district court, to serve concurrent sentences. As the district court concluded, there was no indication that the New Jersey court would have granted concurrent sentences if it had known of the violation of supervised release. *See Sanchez,* 30 F.Supp.2d at 598. Further, as the district court stated, it was entirely speculative whether it would have given Sanchez a concurrent sentence if it had considered

the motion soon after the state sentence was imposed. *See id.* Finally, the district court correctly concluded that " 'this Court's present ability to grant a sentence retroactively concurrent with the state sentence knocks the final brick from the tenuous foundation of defendant's argument.' " *Id.* at 599 (quoting *Lopez,* 985 F.Supp. at 64–65). In short, Sanchez has not shown that he was prejudiced by the delay. Accordingly, we hold that the delay between Sanchez's violation of his supervised release and the issuance of the summons did not violate due process because Sanchez was not prejudiced by the delay.

Our decision finds support in the case law of other circuit courts. In *Tippens,* the defendant, while on federal supervised release, pleaded guilty to a state offense and was sentenced to a prison term. *See* 39 F.3d at 89. That same month, the federal district court issued a warrant for the defendant's arrest for the violation of supervised release, but the government did not execute the warrant until the defendant was released from custody over two years later. *See id.* The government moved to revoke the defendant's supervised release, and the defendant moved to dismiss the motion. The district court denied the defendant's motion and sentenced him to 24 months' imprisonment. *See id.*

On appeal, the defendant argued that his due process rights had been violated by the delay in the execution of the violator's warrant, maintaining that absent the delay in execution he could have served the federal and state sentences concurrently. *See id.* at 89, 90. Relying on *Moody,* the Fifth Circuit determined that the defendant was not entitled to a revocation hearing immediately upon issuance of the violation warrant. *See id.* at 90, 97 S.Ct. 274. The court then held that the defendant was not prejudiced by the delay because "[i]t did not impair [the defendant's] ability to contest the revocation[,][a]nd, the district court had the ability 'to grant, retroactively, the equivalent of concurrent sen-

tences.'" *Id.* (quoting *Moody,* 429 U.S. at 87, 97 S.Ct. 274).

In *Throneburg,* the Sixth Circuit agreed with *Tippens* "that the defendant's due process concerns about delay come into play only when the delay has prejudiced the defendant's ability to contest the validity of the revocation." 87 F.3d at 853. The court of appeals held that a delay that may affect one's ability to serve concurrent sentences was insufficient prejudice to violate due process. *See id.; see also Lopez,* 985 F.Supp. at 64 (prejudice insufficient where it was speculative whether court would have given concurrent sentence and where court had ability to grant the equivalent of a concurrent sentence retroactively).

Our conclusion is not altered by consideration of the cases that Sanchez relies upon to support his argument; none of the cases holds that delay alone constitutes a due process violation. In *United States v. Tyler,* 605 F.2d 851 (5th Cir.1979)(per curiam), the Fifth Circuit found fundamentally unfair a delay "*coupled with* the probation officer's obvious decision not to file the[ ] charges in [a previous, unsuccessful] petition [for revocation]." *Id.* at 853 (emphasis added). In *United States v. Hamilton,* 708 F.2d 1412 (9th Cir.1983), the Ninth Circuit, relying on *Tyler,* stated: "Revocation of probation after unreasonable delay or under circumstances inherently misleading to the probationer is an abuse of discretion." *Id.* at 1415. The court stated that delay could be reasonable under certain circumstances. *See id.* The court held that the district court had abused its discretion under the circumstances of the case because "[a]t some point ... violations of which *the district court has been apprised* and upon which *the probationer has sought corrective action* become stale or are waived as a basis for revoking probation." *Id.* (emphasis added). While stating broadly that unreasonable delay violates due process, *Hamilton* relied on circumstances not present here to conclude that the delay was unrea-

sonable. *See id.* In *Greene v. Michigan Dep't of Corrections,* 315 F.2d 546 (6th Cir.1963), the Sixth Circuit stated in dicta:

> When there has been a violation of the conditions of a parole, the parole authorities, if they desire to take advantage of it, *should* proceed with reasonable diligence to issue and execute a warrant for the arrest of the parolee. Failure to do so *may* result in a waiver of the violation and loss of jurisdiction.

*Id.* at 547 (emphasis added). This conditional language offers little support for Sanchez. In short, none of these cases holds that delay, without more, violates due process.

Finally, in *LaChance v. Reno,* 824 F.Supp. 29, 32 (S.D.N.Y.1993), *aff'd,* 13 F.3d 586 (2d Cir.1994), the district court restated *Hamilton*'s rule that unreasonable delay or circumstances misleading to the defendant violate due process, *see id.* at 32, but held that the delay present in that case was not unreasonable in light of the defendant's subsequent parole violations and his concealment of them, *see id.* at 33–34.

**B.** *U.S.S.G. § 7B1.2(a) Policy Statement*

■■■■ Sanchez argues that the delayed issuance of the summons violated U.S.S.G. § 7B1.2(a). We review de novo a district court's interpretation of the sentencing guidelines. *See United States v. Lopez,* 961 F.2d 384, 386 (2d Cir.1992).

Section 7B1.2(a) of the Guidelines, entitled "Reporting of Violations of Probation and Supervised Release (Policy Statement)," provides that the "probation officer shall promptly report to the court any alleged Grade A or B violation." U.S.S.G. § 7B1.2(a). Grade A and B violations include offense conduct punishable by more than one year imprisonment. *See* U.S.S.G. § 7B1.1(a)(1), (2). The probation officer's failure to promptly report Sanchez's violation, however, does not give Sanchez a cognizable claim, because Chapter 7 policy statements are advisory, not mandatory.

*See United States v. Waters,* 84 F.3d 86, 89–90 & n. 4 (2d Cir.1996)(per curiam). In *Waters,* we noted that "[v]irtually every circuit has ... held that the non-interpretive policy statements of Chapter 7–which do not accompany any guideline and were specifically designated as advisory by the Sentencing Commission-are not mandatory." *Id.* at 89 n. 4 (collecting cases). Therefore, Sanchez cannot claim relief for a violation of § 7B1.2(a) because "that section creates no right to which relief may attach." *Lopez,* 985 F.Supp. at 63.

### III.   CONCLUSION

We affirm the district court's denial of Sanchez's motion to dismiss, because we conclude that Sanchez was not prejudiced by the delay between his violation of supervised release and the issuance of the summons, and because the policy statement in U.S.S.G. § 7B1.2(a) does not create an enforceable right to prompt reporting of a violation. Accordingly, the judgment of the district court is AFFIRMED.