**UNITED STATES of America,**
**Appellee,**

v.

**Angelo RAMOS, Defendant–Appellant.**

**No. 04–2004–CR.**

United States Court of Appeals, Second Circuit.

Submitted: Oct. 22, 2004.

Decided: March 14, 2005.

Glenn T. Suddaby, United States Attorney for the Northern District of New York (Edward P. Grogan, Assistant United States Attorney, Robert P. Storch, Senior Litigation Counsel, of counsel), Albany, NY, for Appellee.

Paul J. Evangelista, Assistant Federal Public Defender (Alexander Bunin, Federal Public Defender, Molly K. Corbett, of counsel), Albany, NY, for Defendant–Appellant.

Before: JON O. NEWMAN, SACK, and B.D. PARKER, Circuit Judges.

SACK, Circuit Judge.

The defendant-appellant, Angelo Ramos, appeals from a judgment of the United States District Court for the Northern District of New York (Frederick J. Scullin, Jr., *Chief Judge*) revoking his supervised release for violating the terms thereof and sentencing him to twelve months' imprisonment to run consecutively to state sentences he was serving at the time. Ramos contends that the delay between the government's filing of the petition alleging Ramos's supervised release violation and the government's later efforts to have Ramos's supervised release revoked was unreasonable and unnecessary. He argues that the delay violated his rights under (1) 18 U.S.C. § 3583(i), which addresses the power of the court to revoke a supervised release term after it has expired, and (2) the Due Process Clause of the Fifth Amendment. The district court denied Ramos's motion to dismiss the supervised release violation petition. *See United States v. Ramos,* No. 1:94–CR–455, slip op. at 14 (N.D.N.Y. Feb. 27, 2004). We agree with the district court, concluding that it had the power, under 18 U.S.C. § 3583(i), to adjudicate the allegations of Ramos's supervised release violation and that Ramos's rights under the Due Process Clause were not violated by the length of time taken to adjudicate the matter.

## BACKGROUND

On September 18, 1996, Ramos was sentenced by the district court to a thirty-six-month term of imprisonment followed by a one-year term of supervised release after Ramos pleaded guilty to the use of a communication device in furtherance of a conspiracy to distribute cocaine, cocaine base, and marijuana, in violation of 21 U.S.C. § 843(b). Ramos was released from prison on May 11, 2000, at which time his supervised release term began. One of the conditions of Ramos's supervised release, a standard condition required by the terms of 18 U.S.C. § 3583(d), was that he not commit another federal, state, or local crime during the period of supervised release.

According to a communication to the district court from a federal probation officer, however, on November 24, 2000, Ramos was arrested by state authorities on state felony charges of burglary in the second degree and criminal mischief after he allegedly entered a residence without permission, destroyed property, and threatened to kill the occupants if they did not tell him where to find someone Ramos was looking for. Ramos was detained in state custody after his arrest.

Several days later, by letter dated November 29, 2000, a federal probation officer informed the district court in which Ramos had been sentenced of Ramos's state arrest. The officer also noted with respect to an unrelated matter that Ramos had failed to inform the probation officer of his purchase of an automobile under a false name, an alleged further violation of the terms of his supervised release. The officer recommended that, in light of Ramos's alleged violations of the conditions of his supervised release, an arrest warrant be issued and lodged as a detainer. Enclosed with the letter was a completed petition dated November 28, 2000, requesting that the court issue a *warrant* and recommending that Ramos's term of supervision be revoked. On December 6, 2000, the day on which the letter and petition were received by the district court, the court ordered that a *summons* be issued. No summons or warrant, however, was in fact issued at that time.

More than four months later, in a letter dated April 23, 2001, the probation officer informed the district court that the state charges against Ramos were still pending and that Ramos remained in state custody. The officer again requested that a warrant be issued. In response, on April 26, 2001, the court ordered that a *warrant* be issued. On May 7, 2001, a federal warrant for Ramos's arrest for violation of his supervised release was issued and filed.[1]

On December 11, 2001, Ramos was convicted in state court of burglary in the second degree and criminal mischief in the third degree. On February 1, 2002, he was sentenced to concurrent prison terms of twelve and four years, respectively.[2] By letter dated September 17, 2002, the federal probation officer informed the court of Ramos's state conviction and sentence. The officer enclosed what he referred to as an amended petition for a warrant, dated the same day. On October 1, 2002, the district court again ordered that a warrant for Ramos's arrest be issued, but because an arrest warrant had already been issued some seventeen months earlier, on May 7, 2001, no new warrant was issued.

In late September 2002, while Ramos was in state custody, the government obtained a writ of *habeas corpus ad prosequendum* requiring that the state authorities produce Ramos in federal court on October 17, 2002, so that he could appear for prosecution of his supervised release violation. In addition, the May 2001 arrest warrant was finally executed on October 10, 2002. Ramos appeared before a federal magistrate judge on October 17, was advised of the supervised release violation petition against him, and was remanded to the custody of the United States Marshal.[3]

Ramos's revocation hearing was set for November 1, 2002. Upon Ramos's request, however, the hearing was adjourned pending a decision on a motion his counsel planned to make challenging the district court's jurisdiction. On July 7, 2003, Ramos filed a motion to dismiss the petition for revocation. In it, he asserted that the warrant for the revocation of his supervised release term was not served on him before the end of his term, and therefore one of the requirements of 18 U.S.C. § 3583(i) was not met. Ramos contended, furthermore, that as a result of the government's delay in seeking the revocation, the district court's jurisdiction was unreasonably and unnecessarily prolonged, thus violating another requirement of § 3583(i). *See Ramos,* slip op. at 4–5. He also claimed that the delay prejudiced him and violated his due process rights. *See id.* at 5–6. More than seven months later, on February 27, 2004, the district court concluded—relying primarily on *United States v. Garrett,* 253 F.3d 443 (9th Cir. 2001), *cert. denied,* 535 U.S. 977, 122 S.Ct. 1451, 152 L.Ed.2d 393 (2002), and *United States v. Sanchez,* 225 F.3d 172 (2d Cir. 2000)—that the court retained the power to revoke the defendant's supervised release under 18 U.S.C. § 3583(i) and that Ramos's due process rights were not violated. *See Ramos,* slip op. at 12–14. The court therefore denied Ramos's motion to dismiss. *Id.* at 14.

---

1. In the proceedings before the district court, there was a dispute as to whether the warrant was filed and received at that time. However, the government subsequently produced a copy of the executed warrant, which shows that it was received by the United States Marshal on May 7, 2001.

2. The sentence was certified on April 10, 2002.

3. Ramos appeared *pro se* at that time, but subsequently accepted representation by the federal public defender appointed for him.

On March 25, 2004, the district court proceeded with Ramos's supervised release revocation hearing. It concluded, relying on the December 11, 2001, state court conviction, that Ramos had violated the terms of his federal supervised release. The court therefore sentenced Ramos to a term of twelve months' imprisonment, to run consecutively to his state sentences.

Ramos appeals from the judgment of the district court.

## DISCUSSION

### I. Standard of Review

 We review *de novo* the district court's determination that Ramos's due process rights were not violated, *United States v. Sanchez*, 225 F.3d 172, 175 (2d Cir.2000), and that it had jurisdiction to adjudicate the allegations of Ramos's supervised release violation, *United States v. Morales*, 45 F.3d 693, 696 (2d Cir.1995).

### II. Due Process

 We turn first to Ramos's claim that the alleged delay in the process that resulted in an adjudication that he had violated the terms of his supervised release, and his incarceration therefor, violated his due process rights.

 "This Court considers the constitutional protections for revocation of supervised release to be the same as those afforded for revocation of parole or probation." *Sanchez*, 225 F.3d at 175; *accord United States v. Jones*, 299 F.3d 103, 109 (2d Cir.2002). And "the conditional freedom of a parolee[4] generated by statute is a liberty interest protected by the Due Process Clause of the Fourteenth Amendment which may not be terminated absent appropriate due process safeguards."

*Moody v. Daggett*, 429 U.S. 78, 85–86, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976) (citing *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)) (footnote added); *see also Sanchez*, 225 F.3d at 175 (noting that "the loss of liberty entailed in the revocation of probation is 'worthy of some due process protection'" (quoting *United States v. Brown*, 899 F.2d 189, 193 (2d Cir.1990))).

 "The Supreme Court does not, however, attach to revocation proceedings the full range of procedural safeguards associated with a criminal trial, because a probationer[5] already stands convicted of a crime." *Sanchez*, 225 F.3d at 175 (citation omitted; footnote added). After an arrest warrant for a parolee or releasee has been issued on the basis of his or her parole or supervised release violation, there is "no constitutional duty to provide [the parolee or releasee with] an adversary ... hearing until he is taken into custody as a parole [or supervised release] violator by execution of the warrant," *Moody*, 429 U.S. at 89, 97 S.Ct. 274, because "execution of the warrant and [consequent] custody under that warrant [is] the operative event triggering any loss of liberty attendant upon parole [or supervised release] revocation," *id.* at 87, 97 S.Ct. 274. Therefore, "delay between a defendant's violation of supervised release and the execution of the violation warrant does not, in and of itself, violate a defendant's due process rights." *Sanchez*, 225 F.3d at 175. We have thus held in the context of the revocation of a defendant's supervised release that a delay of four years from the date of the violation to the execution of the violation warrant did not violate the defendant's due process rights. *Id.* at 174–76.

---

**4.** And therefore, necessarily, we think, that of a supervised releasee.

**5.** And, similarly, we think, a supervised releasee.

This is not to say that a delay between the filing of the petition for a warrant, pursuant to an alleged violation of supervised release, and the execution of the warrant can never result in a due process violation. It can, if the delay does in fact prejudice the defendant by substantially limiting the ability to defend against the charge that the conditions of supervised release were violated. *See United States v. Throneburg*, 87 F.3d 851, 853 (6th Cir.), *cert. denied*, 519 U.S. 975, 117 S.Ct. 411, 136 L.Ed.2d 324 (1996); *United States v. Tippens*, 39 F.3d 88, 90 (5th Cir.1994) (per curiam); *United States v. Wickham*, 618 F.2d 1307, 1310 (9th Cir.1979).

But Ramos was not prejudiced by the delay here. It did not hinder his defense against the supervised release violation charge: His contention that the delay prevented him from obtaining the testimony of a particular witness is entirely unsupported in the record. Ramos has not shown that this witness would have been available for the revocation proceeding had it been held earlier.[6] Therefore, the time lapse between the filing of the petition for a violation of supervised release and the execution of the warrant did not violate Ramos's due process rights.

III. Statutory Provision: 18 U.S.C. § 3583(i)

Section § 3583(i) provides:

The power of the court to revoke a term of supervised release for violation of a condition of supervised release, and to order the defendant to serve a term of imprisonment and . . . a further term of supervised release, extends beyond the expiration of the term of supervised release [1] for any period reasonably necessary for the adjudication of matters arising before its expiration if, [2] before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation.

18 U.S.C. § 3583(i). In this case, the second requirement for the extension of the district court's jurisdiction has unquestionably been met: A warrant for Ramos's arrest was issued on May 7, 2001, several days before the expiration of his supervised release term on May 10, 2001. Ramos argues, however, that the process leading to the adjudication of his alleged violation failed the first requirement. He contends that the period of time that elapsed between the issuance of the warrant and the commencement of the adjudication of his supervised release violation was not "reasonably necessary."

We note at the outset that the meaning and scope of the term "reasonably necessary" is informed by the legislative context of the provision in which it is found. Section 110505(3) of the Violent Crime Control and Law Enforcement Act of 1994, Pub.L. No. 103–322, 108 Stat. 1796, 2016–17, added subsection (i) to 18 U.S.C. § 3583. We have previously noted that "the most likely purpose of th[is] amendment was to make absolutely clear Congress' earlier intention that sentencing courts have the authority to hold hearings to revoke or extend supervised release after expiration of the original term if they issue a summons or warrant during the release period." *Morales*, 45 F.3d at 701. Thus, the qualification that this extension be for a "period reasonably necessary for the adjudication" of a claim of violation, 18 U.S.C. § 3583(i), should be understood in light of Congress's apparent intent that the district court have the power to revoke supervised release

---

**6.** In addition, to the extent that Ramos argues that he was prejudiced by the delay because this witness was unavailable at his *state* trial, Ramos's argument is inapposite, because the timing of the state trial did not depend on the supervised release revocation proceedings.

after discovery of facts underlying such a revocation.

The delay of which Ramos complains comprises three time-periods: (1) the period between his arrest on state charges, which gave rise to the release violation charge, and the date on which Ramos was adjudicated a felon in state court (November 24, 2000 to December 11, 2001); (2) the period between that adjudication and the execution of the federal warrant (December 11, 2001 to October 10, 2002); and (3) the period between that warrant execution and the adjudication of the federal charges against Ramos for the violation of his supervised release (October 10, 2002 to March 25, 2004).[7]

■ We conclude that the period of time during which the state was adjudicating the state criminal charges obviously and easily falls within the scope of reasonable necessity provided by § 3583(i).[8] "In [such a] case[ ], the [releasee's] own con-

duct caused the delay between issuance and execution of the warrant." *United States v. Hill*, 719 F.2d 1402, 1405 (9th Cir.1983). And while it is clear that § 3583(i) "refers to the *federal* adjudication of the defendant's supervised release violations," *Garrett*, 253 F.3d at 449, "such adjudication can include consideration of whether there was ... the commission of a state law violation," *United States v. Poellnitz*, 372 F.3d 562, 571 (3d Cir.2004). Although federal courts are not required, in such situations, to rely on state adjudications to determine whether a supervised release violation has occurred, state adjudications are plainly relevant to the federal determination of whether or not a releasee has committed a crime in violation of state law. *See id.* at 571. Requiring a federal court to begin revocation proceedings before the state court has determined whether the defendant is guilty on the charges underlying revocation would thrust the

---

**7.** In his argument on appeal, Ramos breaks down the time into different periods than we do. He focuses on the time: (1) between his state arrest in November 2000, when the probation department first sought a warrant for his violation of supervised release, and the probation department's renewed petition for a warrant in April 2001; and (2) between the issuance of the warrant in May 2001 and the government's taking Ramos into federal custody in September 2001. Thus, Ramos is focused on the government's delay in seeking a warrant and taking him into federal custody. Because we think that the adjudication of Ramos's state charges constitutes a pivotal moment in the proceedings, we adopt a different method of segmenting the time periods. In addition, for the sake of completeness, we consider a third time-period even though Ramos does not specifically refer to it.

**8.** Thus our approach differs somewhat from that of the district court, *see Ramos*, slip op. at 13, which applied that of the Ninth Circuit. That Circuit concluded that "the sands of [§ 3583(i)'s] hourglass ... should remain suspended during the defendant's incarceration on state charges," *United States v. Garrett*, 253

F.3d 443, 449–50 (9th Cir.2001), *cert. denied*, 535 U.S. 977, 122 S.Ct. 1451, 152 L.Ed.2d 393 (2002), because the "reasonably necessary" time-period should only begin to run once the defendant is in federal custody, *id.* at 450. We think that § 3583(i) operates not as an hourglass that runs out in a time certain, but rather as a "reasonably necessary" extension of time beyond the term of supervised release—provided a summons or warrant has been issued before the end of the term. Even if the "reasonably necessary" extension begins as soon as the supervised release term ends, we think that the time-period related to the state adjudication of state charges would fall within the scope of § 3583(i).

We do not decide here whether the "reasonably necessary" scope of § 3583(i) also includes, beyond the state adjudication, the entire period of time until a defendant's release from state custody after serving his or her state sentence. We need not decide this question because the government obtained a writ of *habeas corpus ad prosequendum* within a year after Ramos's conviction on state charges, and, therefore, prior to the expiration of his twelve-year prison term.

federal court into a determination of the defendant's guilt under state law, an area fundamentally reserved to the states. And judicial efficiency is better served in any event by ascertaining the defendant's guilt once in state court, rather than twice.

■ We also conclude that the time-period after Ramos's state conviction on December 11, 2001, and before the execution of the warrant for Ramos's arrest on October 10, 2002, did not exceed the period authorized by § 3583(i). Section 3583(i)'s "reasonably necessary" requirement may well be stricter than the rather expansive notions of what is reasonable under due process in this context, *see Garrett,* 253 F.3d at 448–49, but reasonable necessity remains, we think, a relatively elastic concept. The underlying consideration is the same—reasonableness with respect to the legitimate interests of the defendant and the government. We conclude that, for the same reason that this period is not overlong under a due process analysis, as we discuss in Part II, above, it was reasonably necessary for section 3583(i) purposes. In any event, Ramos was in state custody until the federal government took him into custody shortly before his first supervised release revocation hearing, and he has shown no specific prejudice arising out of the passage of time between his state conviction and the execution of the arrest warrant.

In addition, 18 U.S.C. § 3583 is concerned with the power of a federal *court* to impose, modify, or revoke a supervised release term; yet the execution of an arrest warrant by law enforcement is a necessary prerequisite for the adjudication of an alleged supervised release violation, and therefore "reasonably necessary" to the adjudication. In light of the fact that Ramos's liberty interests were not infringed, nor was he prejudiced in any way, by the ten months between his state conviction

and the execution of the federal warrant, we discern no reason to second-guess the district court's determination that it retained jurisdiction to adjudicate the matter of Ramos's alleged supervised release violation when the government sought such an adjudication.

■ Finally, the amount of time it took for the district court to adjudicate the allegations of Ramos's violation of the terms of his supervised release, which it ultimately did on March 25, 2004—some seventeen months after Ramos was taken into federal custody on October 17, 2002— may indicate that the court was not acting with dispatch. But, in light of the fact that the proceedings were stayed for a substantial period of time, at Ramos's request, to allow the filing and adjudication of his motion to dismiss, and that Ramos was not prejudiced by this delay, we have no basis on which we can conclude that the period of delay was "unreasonable."

We conclude that the delay in the process that led to the revocation of Ramos's supervised release did not violate 18 U.S.C. § 3583(i). The district court had jurisdiction to revoke Ramos's supervised release, after the term had expired, and to order Ramos to serve a term of imprisonment.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.