*United States v. Alharbi*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.   WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").   A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5ᵗʰ day of March, two thousand twenty-four.

PRESENT:
> **RICHARD C. WESLEY,**
> **MICHAEL H. PARK,**
> **ALISON J. NATHAN,**
> > *Circuit Judges.*

_____

United States of America,

> *Appellee,*

> v.                                                                 22-2092

Fadl Mohamad Alharbi, AKA Fadl Mohamed Alharbi,

> *Defendant-Appellant.*

_____

FOR APPELLEE:                                       JOHN-ALEX ROMANO, Attorney, Appellate Section, Criminal Division, United States Department of Justice (Lisa H. Miller, Deputy Assistant Attorney General, *and* Michael F. Perry, Assistant United States Attorney, *on the brief*) *for* Nicole M. Argentieri, Acting Assistant Attorney General, Washington, D.C., *and* Carla B. Freedman, United States

Attorney for the Northern District of New York, Syracuse, NY.

**FOR DEFENDANT-APPELLANT:** STEPHEN N. PREZIOSI, Law Office of Stephen N. Preziosi P.C., New York, NY.

Appeal from a judgment of the United States District Court for the Northern District of New York (Scullin, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Following a jury trial in the Northern District of New York, Defendant-Appellant Fadl Mohamad Alharbi was convicted of unlawfully procuring naturalization, in violation of 18 U.S.C. § 1425(a), and making a false statement in a passport application, in violation of 18 U.S.C. § 1542. The district court imposed a time-served sentence, two years of supervised release, and a $10,000 fine. It also ordered that Alharbi's citizenship be revoked. We assume the parties' familiarity with the underlying facts, the procedural history of this case, and the issues on appeal.

**I.     Alharbi failed to show a tactical delay or concrete prejudice from any delay.**

Alharbi argues that the government's delay in bringing charges against him violated his constitutional rights. The district court concluded that he failed to demonstrate either that the government intentionally delayed prosecution to gain a tactical advantage or that any delay actually—rather than speculatively—prejudiced his defense. We review the denial of a motion to dismiss as a mixed question, reviewing legal conclusions de novo and factual findings for clear error. *United States v. Van Der End*, 943 F.3d 98, 102 (2d Cir. 2019); *see United States v. Sanchez*, 225 F.3d 172, 175 (2d Cir. 2000) (de novo review of denial of motion to dismiss alleging due process violation). We conclude that the district court correctly denied the motion to dismiss.

Alharbi's indictment was brought within the statute of limitations, which is 10 years for both crimes. 18 U.S.C. § 3291. Prosecutions brought within the statute of limitations carry "a strong presumption of validity" and "are only rarely dismissed." *United States v. Cornielle*, 171 F.3d 748, 752 (2d Cir. 1999). Nevertheless, a pre-indictment delay can violate the Due Process Clause of the Fifth Amendment if it "cause[s] substantial prejudice to [a defendant's] rights to a fair trial" and if "the delay was an intentional device to gain tactical advantage over the accused." *United States v. Marion*, 404 U.S. 307, 324 (1971). The defendant "bears the 'heavy burden' of proving both" prongs of this two-part test, namely that "he suffered actual prejudice because of alleged pre-indictment delay *and* that such delay was a course intentionally pursued by the government for an improper purpose." *Cornielle*, 171 F.3d at 752. "Actual prejudice" means prejudice that is not speculative. *United States v. Birney*, 686 F.2d 102, 105–06 (2d Cir. 1982).

Alharbi points to his 2012 statements at the U.S. Embassy in Yemen as the basis on which the government could have brought its charges. The government explained to the district court that it did not bring the indictment in 2012 because its investigation was ongoing. The district court correctly concluded that Alharbi failed to show that the government intentionally delayed indictment to gain a tactical—rather than evidentiary—advantage. *See United States v. Lovasco*, 431 U.S. 783, 795 (1977) (requiring that delay be "solely to gain tactical advantage over the accused" (quotation marks omitted)); *see also United States v. Mickens*, Nos. 20-258(L), 20-462, 20-630, 2021 WL 3136083, at *2 (2d Cir. July 26, 2021) ("Accordingly, the evidence amply supports the District Court's conclusion that the delay was an 'investigative delay,' and not an intentional protraction of proceedings 'solely to gain tactical advantage over the accused.'" (quoting *Lovasco*, 431 U.S. at 795)). The district court also correctly noted that Alharbi failed to identify evidence or witnesses rendered unavailable as a result of the government's delay.

3

**II.     Neither the Court Interpreters Act nor Rule 604 applies to out-of-court translations.**

Alharbi next argues that the admission of his videotaped interview with federal agents violated both the Court Interpreters Act and Federal Rule of Evidence 604 because the federal agent who translated from English to Arabic for him was not a certified court interpreter. We review the admission or exclusion of evidence for an abuse of discretion. *United States v. Gatto*, 986 F.3d 104, 117 (2d Cir. 2021). But Alharbi raises this argument for the first time on appeal; we thus review for plain error. *United States v. Donziger*, 38 F.4th 290, 302–03 (2d Cir. 2022).

The Court Interpreters Act, 28 U.S.C. § 1827, applies in "judicial proceedings instituted by the United States," including "all proceedings . . . conducted in, or pursuant to the lawful authority and jurisdiction of a United States district court." *Id*. § 1827(j). Federal Rule of Evidence 604 states that an "interpreter must be qualified and must give an oath or affirmation to make a true translation," but it applies "to proceedings before . . . United States district courts," among other courts. Fed. R. Evid. 1101(a). By their plain terms, then, neither the Court Interpreters Act nor Rule 604 applies to a law enforcement officer's out-of-court interview of a suspect, witness, or victim. *See United States v. Ben-Shimon*, 249 F.3d 98, 101 (2d Cir. 2001) (rejecting a defendant's objection to the authentication of a transcript translated by an agent and a cooperating witness even though the cooperator was "not a certified translator"). Moreover, Alharbi did not contest the *accuracy* of Officer Mere's translations at trial. *See United States v. Huang*, 960 F.2d 1128, 1136 (2d Cir. 1992) ("Objections to the adequacy of translation may be waived . . . and the ultimate question is whether the translator's performance has rendered the trial fundamentally unfair." (citing *United States v. Villegas*, 899 F.2d 1324, 1348 (2d Cir. 1990))). The district court did not err by admitting the videotaped interview.

**III. Alharbi's requested jury instruction was not supported by the evidence.**

The district court refused Alharbi's request that the jury be instructed that it could define "parent" to extend beyond someone's biological parents. Reviewing de novo, *see United States v. Gonzalez*, 407 F.3d 118, 122 (2d Cir. 2005), we agree with the district court that the evidence did not support Alharbi's requested instruction. A defendant is entitled to a requested instruction submitting a defense theory to the jury only if "there is a foundation in the evidence." *United States v. Podlog*, 35 F.3d 699, 704 (2d Cir. 1994). There was no credible evidence to support Alharbi's theory that his uncle legitimated him. Alharbi testified that his uncle never formally adopted him in Yemen because Yemen does not permit adoptions. And Alharbi conceded that he is not the biological son of his aunt and uncle. Alharbi's sole evidence that he was his uncle's "legitimate" son was a pair of Yemeni court documents that he admitted were falsified both in interviews with federal agents and again at trial. In short, Alharbi failed to identify any evidence that a jury could credit to support the theory that his uncle "legitimated" him as his son. Without an evidentiary basis to support the proposed instruction, the district court correctly rejected it.

Alharbi points to a New York Court of Appeals case, *Brooke S.B. v. Elizabeth A.C.C.*, 28 N.Y.3d 1 (2016), to argue that New York has expanded "parent" to include nonbiological, nonadoptive adults who accept responsibility for a child. But even assuming *Brooke*—a New York case decided 25 years after Alharbi first applied for a visa to move to Michigan—applies, it would not help Alharbi. *Brooke* determined the meaning of "parent" to include nonbiological, nonadoptive partners who agreed to conceive and raise a child together. *Id*. at 14. Alharbi offered no evidence that his uncle and mother (who are siblings) agreed to conceive and raise him. So even if *Brooke* were relevant as the law of the child or parent's domicile for purposes of legitimation under 8 U.S.C. § 1101(b)(1)(C), it would make no difference here. *See Schreiber v.*

5

*Cuccinelli*, 981 F.3d 766, 773–74 (10th Cir. 2020) (opinion of Holmes, J.) (concluding that "legitimated" in § 1101(b)(1)(C) necessarily requires a biological link between parent and child); *id*. at 789 (Tymkovich, C.J., concurring in the judgment) (concluding that "legitimated" may not require a biological link if the law of the child or parent's domicile does not so require). The district court did not err by declining to give Alharbi's requested instruction about parentage.

**IV.     The jury's verdict was amply supported.**

Alharbi's final argument is that there was insufficient evidence for the jury to convict him on either count. He moved after the government's case and at the close of evidence for a judgment of acquittal under Federal Rule of Criminal Procedure Rule 29. The district court denied the motion, finding that the documentary evidence and Alharbi's own admissions that he knew that his uncle was not his father could support a guilty verdict on both counts. We review the denial of a Rule 29 motion de novo, taking all facts in the light most favorable to the jury's verdict. *United States v. Avenatti*, 81 F.4th 171, 183–84 (2d Cir. 2023).

The government's evidence at trial was not insufficient. Alharbi admitted, both orally under oath and in a writing signed under the penalty of perjury, that statements on his 2010 naturalization and passport applications were false. Other evidence corroborated these admissions. For example, his 2015 passport application listed his birth parents—people other than those listed on his 2010 application—and his 2019 letter to his congressman admitted that he immigrated under his uncle's name, then changed his legal name back to his "original" name when he was naturalized. A jury could reasonably find not only that Alharbi was aware of the lies on the naturalization and passport applications, but that he was aware of the legal significance of his relationship to his uncle. That is, a jury could find that Alharbi knew that his uncle was not his "parent" when he sought an F-11 visa, which is restricted to children of U.S. citizens. Finally,

for the reasons stated above, the jury was not required to credit Alharbi's theory that he was his uncle's legitimated son under Yemeni law. The jury's verdict was amply supported, and the district court properly denied Alharbi's Rule 29 motion.

* * *

We have considered Alharbi's remaining arguments and find them to be without merit. Accordingly, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court