**UNITED STATES of America,**

v.

**Steven DWORKIN, Defendant.**

**No. 90 CR 574.**

United States District Court,
E.D. New York.

Oct. 13, 1999.

Loretta E. Lynch, United States Attorney, Eastern District of New York, Brooklyn, NY, Tanya Y. Hill, Assistant United States Attorney, of counsel.

Andrew M. Lawler, P.C., New York City, Andrew M. Lawler, of counsel, for defendant.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

Defendant Steven Dworkin, a licensed pharmacist, the owner of three pharmacies, and a vendor and wholesale distributor of drugs, pleaded guilty in this court on September 11, 1990 to a one-count information charging that in 1989 he received in interstate commerce a drug called Zantac that was misbranded and offered as delivery for pay in violation of 21 U.S.C. §§ 331(c) and 333(a)(2). He cooperated with the government, and the court sentenced him on January 7, 1994 to three years probation.

In November 1995, a Special Agent of the Federal Bureau of Investigation ("FBI") learned that an individual had alleged that he had been extorted by one Vincent Carnevale acting on behalf of Dworkin. Carnevale was arrested and, according to the FBI, gave statements damaging to Dworkin, statements he later recanted.

The Probation Department directed Dworkin to report for an interview with his attorney on February 2, 1996. By that time Dworkin had become aware that he was a target of an investigation in the Southern District of New York. Dworkin's attorney requested adjournments of any probation violation until the Carnevale case in the Southern District had been decided. The Probation Department then recommended to the court that violation proceedings be deferred until Carnevale was indicted, and the court directed the Probation Department to defer a violation proceeding.

The Probation Department thereafter set a new interview date for March 27, 1996. Two days before that date, Dworkin's attorney called to say that he had had a conversation with an Assistant United States Attorney in the Southern District and that that conversation led defense counsel to believe Dworkin might be indicted. Defense counsel said he therefore did not wish Dworkin to be interviewed at that time.

In the meantime Carnevale had been indicted in the Southern District. By May 14, 1996 he had not pleaded or been found guilty. The Probation Department, believing that Carnevale's testimony would be important to the violation hearing, again recommended to the court that the violation proceedings be deferred until Carnevale's case had been concluded. The court agreed.

By October 21, 1996, Carnevale's case had still not moved forward. In the light of the approaching termination date of January 7, 1997, of Dworkin's probation, the Probation Department asked the court to issue a warrant, to be held in abeyance, in order to "stop the clock" on his supervision term. The court so ordered on October 25, 1996.

About ten months later, on September 2, 1997, Carnevale pleaded guilty in the Southern District to conspiracy to commit extortion. He was sentenced almost ten months later, on June 19, 1998, to twenty-four months incarceration, having received the benefit of a three-level downward departure because of a serious medical condition.

On September 9, 1997, the Probation Department informed the court that the FBI expected that "an indictment against Dworkin is soon likely." Thereafter, on a date not specified in the record, the United States Attorney's Office in the Southern District informed the Probation Department that the case against Dworkin would not be pursued in that district.

On February 4, 1999, the Probation Department, having lost all hope that Carne-

vale would be available to testify or that Dworkin would be prosecuted, asked the court to authorize the initiation of a violation.

The question before the court is whether this court still has power to revoke probation for violation of a condition of probation although the term of probation expired on January 7, 1997, and the violation of probation was not initiated until February 23, 1999. The answer turns on the meaning of 18 U.S.C. § 3565(c), which reads as follows:

> "Delayed revocation—The power of the court to revoke a sentence of probation for violation of a condition of probation, and to impose another sentence, extends beyond the expiration of the term of probation for any period reasonably necessary for the adjudication of matters arising before its expiration if, prior to its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation."

As noted above, on October 25, 1996, prior to the expiration of the probationary term on January 7, 1997, the court issued a warrant to be held in abeyance. Dworkin argues that the period of more than two years between January 7, 1997, when the probationary term expired, and February 23, 1999, when violation proceedings were begun, was not, within the meaning of § 3565(c), a "period reasonably necessary for the adjudication of [the] matters arising before" the expiration.

This court approved the delay beyond January 7, 1997 in the processing of Dworkin's alleged violation of probation because it appeared to be uncertain whether the United States Attorney's office in the Southern District of New York would prosecute Dworkin. The Violation of Probation report shows, and the government concedes, that the "matters arising" before the expiration of the term of probation were the same "matters" that were being assessed by the United States Attorney in the Southern District to determine whether to indict Dworkin. The government

argues that to commence violation proceedings only after the Southern District's investigation of Dworkin was concluded was "not unreasonable," citing *United States* v. *Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); *United States* v. *Hill*, 719 F.2d 1402 (9th Cir.1983); *Barr* v. *Parker*, 453 F.2d 865 (9th Cir.1971).

None of those cases is on point. None of them was decided under § 3565(c) or under any other statute providing for a time period "reasonably *necessary* " (emphasis supplied) to adjudicate matters that arose before the expiration of a probationary term. Section 3565(c) does not grant the court jurisdiction to revoke parole where the violation proceeding was commenced within a "reasonable time" taking into account "all the circumstances." *United States* v. *Hill*, 719 F.2d 1402, 1404–05 (9th Cir.1983). Instead the section restricts the circumstances to the time "reasonably necessary" to "adjudicate" the "matter" by a finding of guilty or not guilty. This court is not free to read § 3563(c) as if it did not contain the word "necessary."

The legislative history of § 3565(c) underscores this point. Before Congress enacted that section, revocation of probation was governed by § 3653, which permitted revocation any time within the five-year maximum probationary period allowed by statute. The Senate report accompanying the final version of § 3565 stated that what is now subsection (c) was meant to "more narrowly restrict the time within which probation may be revoked" than did § 3653. Sen.Rep. No. 225, 98th Cong.2d Sess., reprinted in 1984 U.S.C.C.A.N. 3182, 3285–86. *See United States* v. *Morales*, 45 F.3d 693, 700 (2d Cir.1995) ("the effect of adding the delayed revocation section in current § 3565(c) was not to extend the power of the court to revoke probation, but to restrict it"); *United States* v. *Neville*, 985 F.2d 992, 998 (9th Cir.1993) (same).

In the present case, the government offers no "necessity" for the delay in

bringing about an "adjudication" of the alleged violation. This is not a case in which, for instance, the government learned of an alleged violation shortly before the expiration of the probationary term. Nor was the government unable to execute the warrant because the probationer was imprisoned in another state or otherwise absent from the jurisdiction. *Cf. United States v. Narviez,* No. 97–50150, 1997 WL 686031 (9th Cir.1997); *United States v. Hill,* 719 F.2d 1402, 1404–05 (9th Cir.1983) (listing cases). Of course, even an expeditious, step-by-step adjudication of pertinent "matters" may necessitate delays of many months or years. In *United States v. Ajayi,* 42 F.3d 1386 (4th Cir.1994), for instance, the government promptly litigated the probation violation and the underlying crime but nonetheless did not move to revoke the defendant's probation until fifteen months after the original term expired. The Fourth Circuit upheld the district court's finding that this represented a "reasonably necessary" delay.

The government here did not move to revoke probation until more than three years after it learned of defendant's alleged violation and two years after the probationary term expired. No doubt the Probation Department and the government were thoroughly convinced that Dworkin had committed extortion during his probationary term and hoped to bring him to account if the Southern District failed to do so. That may well have been reasonable. But the government does not articulate why it may have been "necessary." There was nothing to inhibit this court from directing the Probation Department to give notice of the violation and from holding a hearing prior to or soon after January 7, 1997.

The government sought to defer violation proceedings in part because Carnevale would not testify against Dworkin at a violation hearing before his own case was resolved. But Carnevale pleaded guilty in September of 1997, seventeen months before the Probation Department initiated violation proceedings. It is unclear how the Southern District's investigation proceeded during the interim. In fact, there has been no apparent progress in the investigation since the FBI first interviewed Carnevale following his arrest in November, 1995. The government now proposes to go forward based on the identical evidence and the identical witness (the alleged victim of the extortion) it had long before the expiration of the probationary term.

Since there was no, let alone a "reasonable," necessity to delay the revocation proceeding to await the decision of the Southern District, § 3565 stripped this court of its power to revoke probation and impose another sentence.

The court does not reach any other issues.

The charges in the Violation of Probation Report are dismissed and the summons to Dworkin is quashed.

So ordered.