**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

JUAN MORALES-ISABARRAS, AKA
Juan Isabanas, AKA Juan Morales,
AKA Juan I. Morales, AKA Juan
Isaras Morales, AKA Juan Isares
Morales, AKA Juan Morales-
Isabanas, AKA Manuel Moreles,
*Defendant-Appellant*.

No. 13-10005

D.C. No.
4:03-cr-40232-
CW-1

OPINION

Appeal from the United States District Court
for the Northern District of California
Claudia Wilken, Chief District Judge, Presiding

Argued and Submitted
October 9, 2013—San Francisco, California

Filed March 13, 2014

Before: Dorothy W. Nelson, Milan D. Smith, Jr.,
and Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Ikuta

## SUMMARY[*]

### Criminal Law

Affirming the district court's denial of a motion to dismiss in which the defendant asserted that the district court lacked jurisdiction to revoke his supervised release, the panel held that the period from the date the defendant's supervised release term ended in May 2009, until the date of his final revocation hearing and sentencing, was "reasonably necessary" for the adjudication of his 2003 supervised release violation.

### COUNSEL

Angela M. Hansen (argued), Assistant Federal Public Defender; Steven G. Kalar, Federal Public Defender, Oakland, California, for Defendant-Appellant.

Susan B. Gray (argued), Assistant United States Attorney; Melinda Haag, United States Attorney; Barbara J. Valliere, Chief, Appellate Division, San Francisco, California, for Plaintiff-Appellee.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

IKUTA, Circuit Judge:

In this appeal, Juan Morales-Isabarras challenges the district court's jurisdiction to revoke a term of supervised release after the term had expired, claiming that the delay in adjudicating the charges was not "reasonably necessary," *see* 18 U.S.C. § 3583(i). We disagree, and affirm the district court.

I

Morales, a resident of Mexico, had a lengthy history of illegal entries into the United States and deportations back to Mexico. Before the illegal reentry at issue, he was deported from the United States on December 15, 1999, February 24, 2001, September 4, 2001, September 26, 2001, October 2, 2001, and May 18, 2003.

On November 6, 2003, Morales again reentered the United States illegally, and was indicted in the Northern District of California on November 20, 2003, on one count of illegal reentry in violation of 8 U.S.C. § 1326. Morales pleaded guilty, and the district court sentenced him to 21 months imprisonment as well as three years of supervised release. The conditions of supervised release prohibited Morales from committing any further federal, state, or local crimes, or reentering the United States "without the express consent of the Secretary of the Department of Homeland Security." The conditions also required that "[u]pon reentry into the United States, whether legally or illegally, during the period of court ordered supervision, the defendant shall report to the nearest U.S. Probation Office within 72 hours." On

May 18, 2005, Morales was released from federal custody and deported to Mexico.

After his deportation, Morales again reentered the United States. He was arrested for illegal reentry on August 3, 2006 and indicted in the Southern District of California. The 2006 illegal reentry not only violated § 1326, but also violated the conditions of supervised release imposed in connection with the 2003 conviction (to avoid confusion, we refer to this violation as the "2003 supervised release violation"). Upon petition by a probation officer, a district court in the Northern District of California issued an arrest warrant for Morales's 2003 supervised release violation. Although the warrant issued on August 31, 2006, it was not immediately executed on Morales, who was in federal custody due to his August 3, 2006 arrest.

On April 6, 2007, Morales (who had remained in federal custody since his arrest) finally pleaded guilty to a violation of § 1326 based on the 2006 illegal reentry. On July 6, 2007, a district court judge sentenced Morales to 24 months imprisonment and three years of supervised release. Morales was incarcerated for his 2006 conviction until July 15, 2008, when he was released and deported to Mexico.

Morales again illegally reentered the United States at some unknown time. On September 12, 2012, he was arrested in the District of Arizona and charged with "improper entry" under 8 U.S.C. § 1325, a misdemeanor. He pleaded guilty, and a magistrate judge imposed a 180-day sentence of imprisonment.

Approximately two weeks later, on September 25, 2012, the arrest warrant for Morales's 2003 supervised release

violation was executed, and Morales was transferred from the District of Arizona to the Northern District of California to answer these charges.

On November 5, 2012, Morales filed a motion to dismiss, asserting that the district court lacked jurisdiction to revoke his supervised release.  Morales argued that his term of supervised release for the 2003 conviction had expired, and the court could not extend its jurisdiction to revoke the term of supervised release under 18 U.S.C. § 3583(i).  This statute provides:

> (i) Delayed Revocation.— The power of the court to revoke a term of supervised release for violation of a condition of supervised release, and to order the defendant to serve a term of imprisonment and, subject to the limitations in subsection (h), a further term of supervised release, extends beyond the expiration of the term of supervised release for any period reasonably necessary for the adjudication of matters arising before its expiration if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation.

18 U.S.C. § 3583(i).

The district court denied the motion at a hearing on November 19, 2012.  After finding that Morales had violated conditions of his supervised release by illegally reentering the United States in 2006, the court revoked his supervised release. On December 17, 2012, the court sentenced Morales to 18 months imprisonment and 18 months of supervised

release. Morales timely appealed, arguing only that the district court's revocation of his supervised release exceeded its jurisdiction under § 3583(i).

II

We review de novo whether the district court had jurisdiction to revoke a term of supervised release. *United States v. Ignacio Juarez*, 601 F.3d 885, 888 (9th Cir. 2010).

Under § 3583(i) a district court has jurisdiction to revoke a defendant's term of supervised release and impose a punishment, even after "the expiration of the term of supervised release" (1) "for any period reasonably necessary for the adjudication of matters arising before its expiration" if (2) a warrant or summons was issued before its expiration. 18 U.S.C. § 3583(i); *see also United States v. Garrett*, 253 F.3d 443, 446–47 (9th Cir. 2001).

Courts have generally taken a practical approach to the determination of what delays are "reasonably necessary" for purposes of § 3583(i). *See*, *e.g.*, *United States v. Ramos*, 401 F.3d 111, 118 (2d Cir. 2005) (stating that "reasonable necessity remains, we think, a relatively elastic concept"). We have held that under some circumstances, a delay may be "reasonably necessary" even if it is not "technically necessary." *Garrett*, 253 F.3d at 447 (internal quotation marks omitted). Because "the language of § 3583(i) . . . refers to the *federal* adjudication of the defendant's supervised release violations," we determine the reasonable necessity of a delay in adjudicating such violations in light of the purpose of § 3583(i), which is "to assure reasonable speed of federal adjudication" once the defendant is in federal custody to answer such charges. *Id.* at 450. "The underlying

consideration is the same—reasonableness with respect to the legitimate interests of the defendant and the government." *Ramos*, 401 F.3d at 118.

In applying this practical approach, we have held that "the 'reasonably necessary' period of time referenced by § 3583(i) encompasses delays attributable to a defendant's incarceration on state charges." *Garrett*, 253 F.3d at 449. Although we acknowledged that such a delay was "not technically 'necessary' given the federal government's power to execute a writ of habeas corpus ad prosequendum," *id.* at 447, we reasoned that "requiring the federal government to writ a defendant out of state custody for a supervised release revocation hearing could prove extremely burdensome." *Id.* at 450. Similarly, a delay between the issuance of a warrant and a hearing on the revocation issue may be "reasonably necessary" when the defendant is in federal custody during the period of delay due to "multiple proceedings relating to his trial." *United States v. Madden*, 515 F.3d 601, 606 (6th Cir. 2008). Further, when the outcome of an ongoing criminal proceeding is directly related to the issue of whether the defendant violated a condition of supervised release, it is "reasonably necessary" to delay proceedings on the supervised release violation pending resolution of the underlying criminal charge. *See*, *e.g.*, *id.* at 607 (holding delay reasonably necessary where the outcome of the proceedings was "plainly relevant to the federal determination of whether or not [the defendant] had actually violated the conditions of his supervised release" (internal quotation marks omitted)); *Ramos*, 401 F.3d at 117 (concluding that "the period of time during which the state was adjudicating the state criminal charges [on which the revocation of supervised release was based] obviously and

easily falls within the scope of reasonable necessity" under the statute).

### III

We now apply these principles to the facts of this case. There is no dispute that the warrant for the 2003 supervised release violation issued before the three-year term of supervised release had expired. Morales's term of supervised release commenced on May 18, 2005, when he was deported to Mexico. Absent tolling, the term would have expired on May 18, 2008. The district court issued a warrant for Morales's arrest on the 2003 supervised release violation on August 31, 2006, and so the warrant was timely.

We next consider whether "the delay between the end of the term of supervised release and the district court's revocation order is 'reasonably necessary for the adjudication of matters arising before [the term's] expiration.'" *Garrett*, 253 F.3d at 446 (quoting 18 U.S.C. § 3583(i)). For purposes of § 3583(i), the matter requiring adjudication in this case is the violation of the conditions of Morales's 2003 supervised release, which became known to the government when Morales was arrested for illegal reentry on August 3, 2006. Section 3583(i) also requires us to calculate the date when Morales's term of supervised release expired. Under 18 U.S.C. § 3624(e), "[a] term of supervised release does not run during any period in which the person is imprisoned in connection with a conviction for a Federal, State, or local crime unless the imprisonment is for a period of less than 30 consecutive days." As noted above, absent tolling, Morales term of supervised release would have commenced in May 2005 and expired in May 2008. Because Morales was incarcerated in connection with a federal conviction between

July 6, 2007 (the date judgment was entered in the Southern District of California) and July 15, 2008 (the date Morales was released from federal custody and deported to Mexico), his term of supervised release was tolled during that one-year period. Accordingly, Morales's supervised release period did not expire until May 2009.[1]  Finally, § 3583(i) requires us to determine the date the revocation order was adjudicated. Here the court found Morales violated the terms of his supervised release on November 19, 2012, and imposed sentence on December 17, 2012.[2]

We now turn to the question whether the delay from May 2009 (the date the supervised release term expired) until November or December 2012 (the date when the court adjudicated Morales's 2003 supervised release violation) was "reasonably necessary" for the adjudication of the matter at issue, namely, whether the August 2006 illegal reentry constituted a violation of the 2003 supervised release order. Because the 2003 supervised release violation occurred a little more than one year into the three-year term of supervised release, we also take into account the time that passed after the violation occurred.  Logically, if the

---

[1] In his brief, Morales indicates that his supervised release period did not expire until two years after his release from federal custody, but does not explain the basis for his analysis.  Because this discrepancy in dates does not affect our analysis, we rely on our more conservative calculation.

[2] We have not yet determined whether the date of "adjudication" for purposes of § 3583(i) is the date when the district court determines that the defendant violated the terms of supervised release or the date when it pronounces the sentence. *See Garrett*, 253 F.3d at 446, 450 (holding that we consider the delay until the defendant's "final revocation hearing" without indicating whether the defendant's sentencing occurred at that hearing or at a subsequent court date).  We need not reach this issue here, because it does not affect our resolution of the case.

supervised release violation could reasonably have been adjudicated before the expiration of the term of supervised release in May 2009, it would not have been reasonably necessary to adjudicate the violation after the expiration of that term. *See Garrett*, 253 F.3d at 448–49 (discussing *United States v. Dworkin*, 70 F. Supp. 2d 214 (E.D.N.Y. 1999), and that case's consideration of time prior to the expiration of the supervised release period); *see also United States v. Crisler*, 501 F.3d 1151, 1152 (10th Cir. 2007) (concluding it was not "reasonably necessary" to delay revocation of probation under a statutory provision substantially identical to § 3583(i) where there was "no reason why the abated revocation proceeding could not have been conducted by the probation-expiration date"). In making this determination, we use a practical approach to consider what delays are "reasonably necessary," taking into account "the legitimate interests of the defendant and the government." *Ramos*, 401 F.3d at 118.

We first consider the period from August 2006, when the government became aware that Morales had violated the conditions of his 2003 release, until July 2008, when Morales was deported to Mexico. We conclude that the delays during this period were reasonably necessary. The adjudication of the 2006 illegal reentry charge was "plainly relevant" to the district court's adjudication of the violation of the 2003 supervised release conditions because the 2003 supervised release violation was based on that illegal reentry. *Id.* at 117. Therefore, it was "reasonably necessary" to delay proceedings on the 2003 supervised release violation during this period. *Id.* Moreover, the delay while Morales was in federal custody for the sentence relating to the 2006 illegal reentry was reasonably necessary because requiring the government to transfer Morales to the Northern District of

California where the violation was adjudicated would be burdensome. *See Madden*, 515 F.3d at 606 (concluding portion of delay where defendant was held in custody in another federal district on charges unrelated to supervised release violation was "reasonably necessary"); *see also* 18 U.S.C. § 3621(b) (giving the federal Bureau of Prisons the discretion to incarcerate a prisoner at any penal facility in the country, without regard to where the prisoner was convicted). In short, given that Morales was either in federal custody or in proceedings relating to federal prosecution during the entire period at issue, the delay prior to July 2008 (the date of Morales's deportation) was "reasonably necessary." *See Madden*, 515 F.3d at 606.

The delays during the period after Morales was deported to Mexico on July 15, 2008, until he was arrested in September 2012 for illegal reentry were also reasonably necessary. Morales was not in the jurisdiction of the United States for at least some of this period. Locating Morales in a foreign jurisdiction, executing the warrant, and possibly commencing extradition proceedings to bring him to the United States would have been at least as burdensome as executing a writ of habeas corpus ad prosequendum when a defendant is in state custody. Accordingly, postponing execution of a warrant in this circumstance is "reasonably necessary" for purposes of § 3583(i). *See Garrett*, 253 F.3d at 450. Nor is it unreasonable for the government to delay executing a warrant for any period when Morales was illegally in the United States, but had not yet identified himself to a probation officer or been arrested. Indeed, Morales's term of supervised release would have been tolled during any period in which he was illegally in the United States, and had failed to contact his probation officer. *See United States v. Murguia-Oliveros*, 421 F.3d 951, 953 (9th

Cir. 2005) (holding that a defendant's term of supervised release is tolled while the defendant is a fugitive, which includes a failure to comply with the terms of supervised release).

Finally, the period of delay between Morales's September 2012 arrest and the final revocation hearing and sentencing in November and December 2012 was reasonably necessary in light of the time necessary to complete federal proceedings in the District of Arizona, transfer Morales to the Northern District of California, and allow the parties to brief and adjudicate Morales's motion to dismiss. *See Garrett*, 253 F.3d at 450 (concluding several weeks of delay between execution of violation warrant and revocation hearing was "'reasonably necessary' for the adjudication of matters arising prior to the expiration of [the defendant's] supervised release").

Relying on *United States v. Hill*, 719 F.2d 1402 (9th Cir. 1983), Morales argues that a delay is reasonably necessary only if caused by the defendant's own conduct. We reject this argument. *Hill* interpreted two now-repealed statutes, 18 U.S.C. §§ 3651 and 3653, governing a court's revocation of probation for a violation of probation conditions. *Id.* at 1404. As we recognized in *United States v. Santana*, 526 F.3d 1257 (9th Cir. 2008), *Hill* is no longer good law because "the statute under which it was decided has been repealed." *Id.* at 1261. Moreover, §§ 3651 and 3653 applied only to violations of conditions of probation, so "even if [the repealed statute] were still in effect, [it] would not apply in a revocation of supervised release case." *Id.*

Accordingly, we conclude that the period from the date his supervised release term ended in May 2009, until the date

of his final revocation hearing and sentencing was "reasonably necessary" for the adjudication of the violation of his 2003 supervised release conditions.[3]  Therefore, the district court had jurisdiction to adjudicate Morales's 2003 supervised release violations.

**AFFIRMED.**

---

[3] Morales does not argue that his liberty interests were infringed by this period of delay. Because we conclude the delay was "reasonably necessary," we need not address the government's argument regarding prejudice.