FILED
United States Court of Appeals
Tenth Circuit

June 24, 2024

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DARNELL TYREE-PEPPERS,

    Defendant - Appellant.

No. 23-3171

_____

**Appeal from the United States District Court
for the District of Kansas
(D.C. No. 5:17-CR-40085-TC-1)**

_____

Melody Brannon and Paige A. Nichols, Kansas Federal Public Defender, Topeka, Kansas for Appellant Darnell Tyree-Peppers.

Jared S. Maag (joined by Kate E. Brubacher and James A. Brown on the brief), United States Attorney for the District of Kansas, Topeka, Kansas for Appellee United States of America.

_____

Before **HARTZ**, **EID**, and **CARSON**, Circuit Judges.

_____

**HARTZ**, Circuit Judge.

_____

Although the probation officer of Defendant Darnell Tyree-Peppers petitioned for revocation of his supervised release during the term of that release, the district court did not conduct the hearing on the petition until after expiration of the term.

The court granted the petition in part and ordered an additional one year of supervised release. Mr. Tyree-Peppers challenges the district court's jurisdiction to revoke his supervised release, arguing that the delay in the revocation proceedings was not "reasonably necessary for the adjudication," as required by 18 U.S.C. § 3583(i). We cannot agree. The revocation delay was attributable to an ongoing state prosecution of Mr. Tyree-Peppers on the very serious charge of first-degree murder. The outcome of that proceeding was directly related to the question whether Mr. Tyree-Peppers violated the condition of his supervised release forbidding him from committing a state crime. We therefore affirm the district court's exercise of jurisdiction.

## I.     BACKGROUND

On April 16, 2018, Mr. Tyree-Peppers pleaded guilty to stealing a firearm from a federally licensed dealer. *See* 18 U.S.C. §§ 922(u) and 924(m). He was sentenced by the district court to a two-year term of imprisonment followed by a three-year term of supervised release.

Four months after Mr. Tyree-Peppers began his supervised release, his probation officer filed a petition to modify the conditions of supervision because of alleged violations of conditions of release requiring him to avoid communicating with individuals he knew to be involved in criminal activity and to notify his probation officer of any change in living arrangements. He consented to the modification. New conditions required him to wear a location-monitoring device and

prohibited him from associating with known gang members or from participating in any gang-related activities.

Less than a year later, Mr. Tyree-Peppers's probation officer filed a petition for a warrant for his arrest and revocation of supervision based on three alleged Grade C[1] violations of his supervision conditions: (1) twice interacting with people with prior felony convictions; (2) failing to report to his probation officer as instructed; and (3) failing to notify his probation officer of a change in living arrangements. The district court issued the requested warrant on August 3, 2020.

On October 16, 2020, the probation officer submitted an amended petition alleging a Grade A violation of Mr. Tyree-Peppers's conditions of supervised release: he had been arrested by state police officers on charges of first-degree murder, aggravated burglary, and aggravated robbery, potentially violating the condition that he not commit another federal, state, or local crime.

Mr. Tyree-Peppers was in state custody while the state criminal charges were pending. Meanwhile, his three-year term of supervised release expired on July 5, 2022. A jury eventually acquitted him on all counts on June 12, 2023. Following the acquittal, he was released from state custody into federal custody under the August 2020 federal arrest warrant. The district court held his revocation hearing on August 16, 2023.

---

[1] Violations of conditions of supervised release are rated as Grade A, B, or C, in decreasing order of seriousness. *See* USSG § 7B1.1(a).

At the hearing Mr. Tyree-Peppers argued that the district court lacked jurisdiction over the revocation because his supervision term expired while he was in state custody and because the delay after expiration was not "reasonably necessary for the adjudication" of the federal charges, as required by 18 U.S.C. § 3583(i). The district court ordered the parties to brief the issue and set the final revocation hearing for September 26, 2023. At that hearing the court concluded that the delay was reasonably necessary because it was attributable to pending state charges related to whether Mr. Tyree-Peppers violated a supervised-release condition. The court revoked his supervised release based on the three Grade C violations. It reinstated an additional year of supervised release, ordering him to submit to mandatory drug testing, cognitive behavioral therapy, and searches of his person and property.

## II.    DISCUSSION

We review de novo whether the district court had jurisdiction to revoke a term of supervised release. *See United States v. Bailey*, 259 F.3d 1216, 1218 (10th Cir. 2001). The relevant statutory provision provides:

> Delayed revocation.--The power of the court to revoke a term of supervised release for violation of a condition of supervised release, and to order the defendant to serve a term of imprisonment and, subject to [limitations not relevant here], a further term of supervised release, extends beyond the expiration of the term of supervised release for any period reasonably necessary for the adjudication of matters arising before its expiration if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation.

18 U.S.C. § 3583(i).[2] Thus, a district court can revoke a term of supervised release after that term has expired if (1) the violation warrant or summons was issued before the term expired; and (2) the delay between the end of the term of supervised release and the revocation was "reasonably necessary" to adjudicate matters arising before the term's expiration. *Id.*

There is no dispute that the first requirement is satisfied. A warrant for Mr. Tyree-Peppers's arrest based on alleged violations of his supervised release was issued on August 3, 2020, well before the expiration of his supervised-release term on July 5, 2022.

The sole dispute in this appeal regards the second § 3583(i) requirement. Both parties agree that the revocation delay was to await resolution of the state charges of first-degree murder, aggravated burglary, and aggravated robbery against Mr. Tyree-Peppers, which were the basis of the revocation-petition claim that he had violated the supervised-release condition that he "not commit another federal, state, or local crime." Aplt. App., Vol. I at 48–49. Given the direct relevance of the state proceedings to the federal adjudication and the seriousness of the state charges, we conclude that the delay was reasonably necessary.

To begin with, we note that courts take a "practical approach" in determining what delays are reasonably necessary for purposes of § 3583(i). *United States v.*

---

[2] The government suggested at oral argument that § 3583(i) is not a *jurisdictional* requirement. But resolution of that issue would have no effect on our ultimate resolution of this case, so we express no view on the subject.

*Morales-Isabarras*, 745 F.3d 398, 401 (9th Cir. 2014). For example, although proceeding with the federal hearing during the defendant's state custody would have been possible by means of a writ of habeas corpus ad prosequendum, "a delay may be 'reasonably necessary' even if it is not 'technically necessary.'" *Id.*

We also note that it appears that every circuit to consider the question has ruled that the pendency of a state prosecution for offenses alleged as grounds for revocation of supervised release justifies a § 3583(i) delay. *See, e.g., id.* at 402 ("[W]hen the outcome of an ongoing criminal proceeding is directly related to the issue of whether the defendant violated a condition of supervised release, it is 'reasonably necessary' to delay proceedings on the supervised release violation pending resolution of the underlying criminal charge."); *United States v. Madden*, 515 F.3d 601, 607 (6th Cir. 2008) (similar); *United States v. Ramos*, 401 F.3d 111, 117 (2d Cir. 2005) ("We conclude that the period of time during which the state was adjudicating the state criminal charges obviously and easily falls within the scope of reasonable necessity provided by § 3583(i)."); *United States v. Poellnitz*, 372 F.3d 562, 571 (3d Cir. 2004) ("Although it is not necessary that the probationer be adjudged guilty of a crime to revoke release, it is certainly understandable that the District Court waited for adjudication of these state charges because it might be relevant in the revocation proceeding." (citation omitted)); *cf. United States v. White*, 556 F. App'x 804, 808 (11th Cir. 2014) (court held that delay was "reasonably necessary" where almost all the delay was during state-court prosecution for drug trafficking, but defendant had not argued that the delay was not "reasonably

necessary"); *United States v. Shipp*, 424 F. App'x 583, 585 (8th Cir. 2011) ("The delay between the revocation arrest warrant and Shipp's initial appearance on revocation proceedings was reasonable as the [federal] counterfeiting charge [which was the basis for the revocation proceeding] was adjudicated during this time."). Similarly, this court regularly holds that a defendant's constitutional right to a speedy trial is not violated when the federal court delays proceedings until disposition of serious state charges. *See United States v. Garcia*, 59 F.4th 1059, 1066–68 (10th Cir. 2023); *United States v. Medina*, 918 F.3d 774, 788–89 (10th Cir. 2019); *United States v. Nixon*, 919 F.3d 1265, 1272 (10th Cir. 2019); *United States v. Frias*, 893 F.3d 1268, 1272 (10th Cir. 2018).

We join our fellow circuits, at least when the state prosecution is for a charge as serious as murder. Letting the state prosecution go first avoids duplicating efforts by trying the same allegations in separate proceedings, *see Ramos*, 401 F.3d at 118 ("[J]udicial efficiency is better served . . . by ascertaining the defendant's guilt once in state court, rather than twice."), and a decision at the revocation hearing (which need only be supported by a preponderance of the evidence) is much less likely to determine the outcome at the state prosecution (where guilt must be proved beyond a reasonable doubt) than vice versa. Comity,[3] too, suggests that the state prosecution

---

[3] Mr. Tyree-Peppers suggests that comity should not be a consideration because it is not mentioned in the statute. But that ship sailed long ago. Federalism is a fundamental consideration in applying any federal statute that does not explicitly reject its application. As the Supreme Court wrote in *Younger v. Harris*, the "underlying reason for restraining courts of equity from interfering with [state]

should go first, because the state interest is particularly significant when the state charge is very serious. *See id.* at 117–18 (federal hearing would have required the federal government to litigate the facts of a state homicide case in which it was not involved, "thrust[ing] the federal court into a determination of the defendant's guilt under state law, an area fundamentally reserved to the states"). A murder prosecution is complicated enough as it is, *see Nixon*, 919 F.3d at 1272 (noting the "inherent complexity of murder cases"), and a concurrent federal evidentiary hearing could materially interfere with that prosecution in any number of ways, such as by providing the defendant with otherwise unavailable discovery, creating complexity in handling evidence and preserving a clean chain of custody, and creating logistical problems as the defendant's custody is transferred between jurisdictions.[4] *Cf. Garcia*, 59 F.4th at 1066 (in rejecting speedy-trial claim arising from delay to permit state prosecution to proceed first, court points out the government's interest in

criminal prosecutions is reinforced by an even more vital consideration, the notion of 'comity.'" 401 U.S. 37, 44 (1971). It defined the term as "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Id.* "What the concept . . . represent[s] is a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." *Id.*

[4] Mr. Tyree-Peppers contends his physical proximity to the federal courthouse while in state custody would have eased the logistical burden of transferring him between jurisdictions. But physical transportation is not the only issue with transferring custody, and transfer of custody is only one of a number of concerns.

safeguarding the state prosecution from "the possibility of competing hearings, trials, and demands for witnesses and custody of Defendant, along with chain-of-custody issues with the [evidence] and the potential for inconsistent testimony").

We think it eminently sensible to delay a revocation hearing until resolution of a state prosecution for first-degree murder when that alleged offense is the basis for the most serious charge in the petition for revocation.[5] Therefore, we hold that the delay in this case was "reasonably necessary" under 18 U.S.C. § 3583(i).

## III.    CONCLUSION

Because the district court had jurisdiction to proceed with the revocation hearing, we **AFFIRM** the judgment below. We **DENY** as moot Mr. Tyree-Peppers's motion to expedite this appeal.

---

[5] Because Mr. Tyree-Peppers has not claimed prejudice, we need not address whether prejudice to the defendant is a relevant consideration in determining whether a delay is "reasonably necessary."